The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 2, 2018, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: November 2, 2018**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 17-16032 |
| | ) | |
| SUSAN ADDLEMAN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

### MEMORANDUM OF OPINION[1]

Susan Addleman filed bankruptcy to get back the car she desperately needed.  But the used car dealer, Loudon Motor Sales, LLC ("Loudon Motor"), refused to return her car and later sold it to a third party.  For the reasons that follow, the Court finds that Loudon Motor willfully violated the automatic stay and orders Loudon Motor to pay the debtor $18,603 in actual damages, including $2,625 in attorney's fees, plus $25,000 in punitive damages by **November 30, 2018**.

---

[1] This Opinion is not intended for official publication.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

The procedural history of the debtor's bankruptcy is intertwined with the relevant facts needed to resolve this contested matter. Therefore, the Court will recount the procedural history as part of a chronological recitation of the facts below.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of the debtor, the only witness who testified at the evidentiary hearing held on October 4, 2018. Although the attorney of record for Loudon Motor appeared at the evidentiary hearing, he put on no witnesses and offered no exhibits. Even if not specifically mentioned in this decision, the Court considered the testimony of the witness, exhibits admitted into evidence, and any stipulations. Unless otherwise indicated, the following facts were established at the hearing by a preponderance of the evidence.

In the summer of 2015, the debtor needed a car because her current lease was ending. The debtor had poor credit so her boss, attorney Patrick O'Malley, introduced her to Walter Loudon of Loudon Motor to help her get a replacement car despite her financial history. On the same day they were introduced, the debtor entered into an agreement with Loudon Motor to purchase a 2007 Ford Mustang. The debtor agreed to pay $2,000 down and $318.62 per month for 36 months. The certificate of title issued on June 24, 2015, indicates a purchase price of $9,750 and tax of $780. It identifies the owner as Susan A. Addleman and the previous owner as Loudon Motor Sales, LLC.

A few months after the debtor purchased her car from Loudon Motor, the employment relationship between the debtor and attorney O'Malley ended. For reasons unknown to the Court, when the employment relationship ended, attorney O'Malley told the debtor that she must return her car to Loudon Motor; however, Walter Loudon told the debtor that she could keep her car, as she was current on her payments. Nevertheless, in September 2015, after the debtor was three days late in making a payment, Loudon Motor repossessed the debtor's car for the first time. The debtor paid $2,500 to Loudon Motor to get her car back.

The debtor continued to make regular payments to Loudon Motor through the summer of 2017. Loudon Motor never sent the debtor any written statements indicating the balance remaining on her car loan. On several occasions, the debtor

did receive a balance figure by text message from Walter Loudon in response to her many requests. At all times, the debtor dealt with Walter Loudon on behalf of Loudon Motor. In the summer of 2017, Walter Loudon informed the debtor that $122 was the remaining balance owed on her car. Although Walter Loudon disagreed at his deposition that the balance due was only $122, asserting that the amount in his text message was in error, Loudon Motor failed to offer any evidence of its own at the evidentiary hearing. Therefore, the Court finds by a preponderance of the evidence that the balance remaining as of October 11, 2017, was $122.

For whatever reason, Loudon Motor repossessed the debtor's car for a second time on Saturday, October 7, 2017. On Monday, October 9, 2017, the debtor offered to pay $900 to regain possession of her car; however, Walter Loudon refused to speak with her.

The time of the second repossession was a particularly difficult time for the debtor. The debtor's teenage son had been physically attacked and threatened, and was dealing with serious mental health issues as a result. Although the debtor had previously shared a home with her boyfriend, the debtor moved out of the boyfriend's home after he failed to be supportive of her son. The debtor and her son began staying with friends or the debtor's daughter. If the debtor could not find a place for her and her son to stay at night, she would insist that her son stay

4

with his father while the debtor slept at a hotel, a homeless shelter, or in her car.

Although she was temporarily staying with her daughter to help her daughter

recover from surgery, the debtor was primarily living out of her car when it was

repossessed for the second time. The debtor's car contained many of the debtor's

personal belongings, including license plates, clothes, a fax machine, phones, and

important documents such as her birth certificate and social security card.

The debtor filed bankruptcy on Wednesday, October 11, 2017, four days

after the second repossession. On the same day that she filed bankruptcy, the

debtor texted both Walter Loudon and attorney O'Malley to notify them of her

bankruptcy filing. The debtor's text to Walter Loudon stated:

> Hi mr. Loudon this is Susan addleman I have filed bankruptcy and
> named you as a creditor the case number is 17-16032 a relief ordered
> you are being instructed not to dispose of the car or any of the
> belongings contents in the car if you do you will be held in contempt
> of a federal court order I have also forwarded your attorney Patrick
> O'Malley who will not speak to me . . . .

Walter Loudon admitted in his deposition that he received this text. Attorney

O'Malley sent the debtor the following text message in response:

> I have kindly asked you not to text me or my client. I will only talk
> with an attorney who is representing you. If you keep this up I will
> file a telecommunications harassment complaint . . . .

The debtor continued her own unsuccessful efforts to get the car back, including

repeatedly calling and texting attorney O'Malley.

During the two months after filing the debtor's bankruptcy, the debtor's attorney did not contact Loudon Motor or attorney O'Malley or file a motion seeking assistance from the Court. On December 13, 2017, the debtor's attorney filed a motion to return possession of the debtor's car, which was set for a hearing on January 9, 2018. On January 2, 2018, the debtor's attorney also filed a motion to redeem the car, but he later withdrew this motion.

On January 9, 2018, the Court marked the debtor's motion for an order to return the debtor's car as "no response, granted," but the debtor's attorney did not submit an acceptable proposed order until January 30, 2018. The Court signed and entered the order on February 1, 2018.

On February 2, 2018, the debtor took a certified copy of the Court's order to the Canton used car location of Loudon Motor, 2001 Whipple Avenue NW, Canton, Ohio 44708. The local police also arrived at the location with the debtor. While there, someone pulled a car up to the side door that the debtor believed was her car; however, she was not allowed to get close enough to read the vehicle identification number. Someone on the lot then referred her to another Loudon used car lot in Alliance, Ohio.

While taking an Uber to the used car lot in Alliance, the debtor attempted to contact Walter Loudon. Walter Loudon answered his phone and demanded to know how much money the debtor had to pay him. After the debtor stated she

6

only owed $122 and reminded him that she had offered to pay him $900 on the Monday following the repossession, Walter Loudon hung up the phone.

The debtor arrived at the used car lot in Alliance and similarly requested the presence of the Alliance police. The debtor's car was not at the used car lot in Alliance, and a police officer unsuccessfully attempted to contact Walter Loudon. A few days later, the police officer informed the debtor that Loudon Motor had sold her car.

On January 27, 2018, a related Loudon entity owned by Walter Loudon's son, Gregory D. Loudon, signed a contract to sell the 2007 Ford Mustang to a third party for $6,244.97. The contract appears to have been signed by Gregory D. Loudon. As of the date of this contract, the 2007 Ford Mustang was still titled in the debtor's name. It is unclear when the third party took possession of the 2007 Ford Mustang; however, neither Loudon Motor nor anyone acting on behalf of Loudon Motor ever released the lien on the debtor's certificate of title or obtained a new certificate of title in its own name to the 2007 Ford Mustang until March 13, 2018. Also on March 13, 2018, someone transferred title of the 2007 Ford Mustang from Loudon Motor to the third party purchaser. In other words, on January 27, 2018, the related Loudon entity sold a car for which it held no certificate of title. On March 13, 2018, that same related entity then transferred title from the debtor to a third party with actual knowledge of both the debtor's

7

pending bankruptcy and the Court's February 1, 2018, order to return the debtor's car, based on the debtor's visit to the Loudon used car lot in Alliance on February 2, 2018.

On March 9, 2018, the debtor filed a motion requesting that the Court order Loudon Motor to show cause for violating the automatic stay and failing to obey the Court's order to return the debtor's car. An initial hearing was set for April 10, 2018. On April 2, 2018, an attorney for Loudon Motor filed a brief in opposition to the motion to show cause. At the request of the attorneys for both parties, the initial hearing set for April 10, 2018, was not held. The Court adjourned the hearing to May 8, 2018.

In May of 2018, the debtor found new housing with her son in Brook Park, Ohio. The debtor found new jobs, including one that she can walk to since she has yet to obtain a new car.

On May 7, 2018, the attorneys for both parties requested that the hearing set for the next day be rescheduled, and the Court adjourned the hearing to June 5, 2018. On June 4, 2018, the attorneys for both parties again requested that a hearing set for the next day be rescheduled, and the Court adjourned the hearing to July 24, 2018.

On July 24, 2018, the Court heard oral argument on the debtor's motion. The debtor's attorney and Loudon Motor's attorney, Gordon Woolbert, appeared

8

and agreed to the Court scheduling an evidentiary hearing no earlier than
September 4, 2018. On July 25, 2018, the Court issued a scheduling order setting
an evidentiary hearing for September 6, 2018.

On August 20, 2018, Loudon Motor obtained new counsel, attorney
Ken Rubenstein. On August 21, 2018, the attorneys for both parties asked to
postpone the evidentiary hearing. On August 30, 2018, the Court rescheduled the
evidentiary hearing for September 20, 2018. On September 10, 2018, the debtor's
attorney again asked for a new evidentiary hearing date. On September 14, 2018,
the Court held a conference call with the attorneys for both parties, who agreed to a
new evidentiary hearing date of October 4, 2018.

On October 4, 2018, the Court held the evidentiary hearing. Only the debtor
testified. The attorney for Loudon Motor put on no witnesses and offered no
exhibits. Debtor's exhibits 1, 7, 10, 11, 12, and 13 were received without
objection. During the trial, the debtor also sought to admit the transcript of the
deposition of Walter Loudon taken in connection with this matter on
September 20, 2018. Loudon Motor objected. The Court took the request under
advisement because the Court was concerned that the debtor had failed to
subpoena Walter Loudon, raising questions about his unavailability as a witness.

Upon further review, the Court concludes that, regardless of Walter
Loudon's availability as a witness, the deposition transcript is admissible under

9

Civil Rule 32, made applicable under Bankruptcy Rules 9014 and 7032, and

Evidence Rule 801(d)(2)(D).  Civil Rule 32 provides in pertinent part:

> (a) USING DEPOSITIONS.
>> (1) *In General*.  At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
>>> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
>>> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
>>> (C) the use is allowed by Rule 32(a)(2) through (8).

In addition, Rule 32(a)(3) provides:

> (3) *Deposition of a Party, Agent, or Designee*.  An adverse party may use for any purpose the deposition of a party who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).

In the present case, the deposition transcript of Walter Loudon meets all three requirements of Rule 32(a)(1).  First, Loudon Motor was represented at the taking of the deposition.  Second, the statements would be admissible under Evidence Rule 801(d)(2)(D) if Walter Loudon were present and testified at the hearing because the statements were offered against Loudon Motor and because Walter Loudon was an agent or employee of Loudon Motor.  And, third, the deposition may be used under Rule 32(a)(3) because, at the time of the deposition, Walter Loudon was Loudon Motor's officer, director, or managing agent.  *See Carter v. Univ. of Toledo*, 349 F.3d 269, 275–76 (6th Cir. 2003) (statement by vice provost of defendant university in deposition offered by plaintiff was admissible as

10

nonhearsay); *see also Coletti v. Cudd Pressure Control,* 165 F.3d 767, 773

(10th Cir. 1999) ("neither Rule 801(d)(2) nor Rule 32(a)(1) require a showing of

unavailability for admissions of party-opponents"). Therefore, the Court will

admit as substantive evidence the deposition transcript of Walter Loudon.

Without objection, the Court also takes judicial notice under Evidence

Rule 201 of the title information maintained by the Ohio Bureau of Motor

Vehicles' online website pertaining to the debtor's 2007 Ford Mustang with the

vehicle identification number 1ZVFT80N275307496, at least as to the dates of

transfer and release of liens. *See* Order Regarding Court's Intent to Take Judicial

Notice of Certain Information Available on the Ohio Bureau of Motor Vehicles'

Online Website, October 10, 2018 (Docket No. 77).

## DISCUSSION

The Court may impose damages for violations of the automatic stay under

11 U.S.C. § 362. The filing of a bankruptcy petition gives rise to the automatic

stay of "any act to obtain possession of property of the estate or of property from

the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Subsection 362(k)(1) (formerly subsection 362(h) prior to the 2005 bankruptcy

amendments) provides:

> . . . an individual injured by any willful violation of a stay provided by
> this section shall recover actual damages, including costs and
> attorneys' fees, and, in appropriate circumstances, may recover
> punitive damages.

11

A creditor willfully violates the stay if the creditor knows of the stay and violates the stay with an intentional act. *See Transouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687–88 (B.A.P. 6th Cir. 1999) (upholding a bankruptcy court's imposition of damages against a creditor that refused to return a repossessed car postpetition); *see also Grine v. Chambers (In re Grine)*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010). "A 'willful violation' does not require proof of a specific intent to violate the stay, but rather 'an intentional violation by a party aware of the bankruptcy filing.' " *Baer v. HSBC Auto a/k/a/ Santander USA Consumer USA (In re Baer)*, No. 10-2062, 2011 WL 3667511, at *4 (Bankr. E.D. Ky. Aug. 22, 2011) (quoting *In re Sharon*, 234 B.R. at 687).

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *Mitchell v. Anderson (In re Mitchell)*, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016). Under § 362(k), damages must be proven with reasonable certainty and cannot be based on conjecture or speculation. *See Archer v. Macomb Cnty. Bank (In re Archer)*, 853 F.2d 497, 499–500 (6th Cir. 1988). As the party seeking damages, the debtor has the burden of proving entitlement to damages. *In re Sharon*, 234 B.R. at 687.

The Court must decide: (1) whether the creditor's actions constitute a violation of section 362; (2) if the creditor violated section 362, whether such violation was "willful"; and (3) whether the debtor is entitled to damages, including attorney's fees, and punitive damages.

## LOUDON MOTOR VIOLATED THE AUTOMATIC STAY UNDER 11 U.S.C. §362 BY FAILING TO RETURN AND THEN SELLING OR ARRANGING TO SELL THE DEBTOR'S CAR AFTER THE BANKRUPTCY CASE WAS FILED

The Court's first inquiry is whether Loudon Motor's actions violated the automatic stay. The filing of the debtor's voluntary petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The debtor filed for bankruptcy on October 11, 2017. The automatic stay came into effect as soon as the bankruptcy case was filed. Loudon Motor failed to return the car to the debtor and then sold or arranged to sell the debtor's car to a third-party purchaser without first obtaining relief from stay from the bankruptcy court. Therefore, the debtor has shown by a preponderance of the evidence that Loudon Motor violated the automatic stay.

## THE VIOLATION OF THE STAY WAS "WILLFUL"

A creditor's "violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon*, 234 B.R. at 688. "As used in [current subsection 362(k)], 'willful,' unlike many

13

other contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004); *see In re Sharon*, 234 B.R. at 687–88 (creditor's belief that its actions would not violate the stay does not preclude a finding that creditor's action was "willful" within meaning of section 362(k)); *see also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992). The debtor bears the burden of establishing by a preponderance of the evidence that the violation of the automatic stay was willful. *See Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

Loudon Motor repossessed the debtor's car on October 7, 2018. At that time, the automatic stay was not in effect, as the debtor had not yet filed bankruptcy. On the same day as the filing, the debtor immediately contacted Walter Loudon and attorney O'Malley. In her text message to Walter Loudon, the debtor stated that she had filed bankruptcy, provided the case number, and informed Walter Loudon not to dispose of her car or any of her belongings. From that point forward, despite the informality of a text message as a medium, Loudon Motor had knowledge of the debtor's bankruptcy case. Notice of a debtor's bankruptcy filing "does not need to be formal, so long as the facts would cause a reasonably prudent person to make additional inquiry." *In re Swartzentruber*, No. 13-61147, 2014 WL 2930450, at *2 (Bankr. N.D. Ohio June 27, 2014)

14

(quoting *In re Stewart*, 499 B.R. 557, 571 (Bankr. E.D. Mich. 2013)). Receiving a text message with a bankruptcy case number as well as a warning not to dispose of the debtor's car or her belongings would, at a minimum, have caused a reasonably prudent person to further investigate the information included in the debtor's text. Therefore, Loudon Motor had notice of the debtor's bankruptcy as of October 11, 2017, the day the debtor filed her bankruptcy case.

"To avoid violating § 362(a), a creditor is not only required to refrain from certain activity, but may be required to take affirmative action." *In re Horace*, No. 14-30103, 2015 WL 5145576, at *4 (Bankr. N.D. Ohio Aug. 28, 2015); *see also In re Sharon*, 234 B.R. 676 (creditor willfully violated the automatic stay by failing to return the debtor's car that it repossessed prepetition). Once the creditor learns that a bankruptcy petition has been filed, the creditor has an affirmative duty to return the property to the debtor and restore the status quo. *In re Webb*, 472 B.R. 665, at *14 (B.A.P. 6th Cir. 2012); *In re Clark*, 60 B.R. 13, 14 (Bankr. N.D. Ohio 1986) (creditor had not known of debtor's filing at the time of repossession but was, nonetheless, required to return vehicle); *Dawson v. J & B Detail, L.L.C. (In re Dawson)*, No. 05-1463, 2006 WL 2372821, at *8 (Bankr. N.D. Ohio July 28, 2006) ("While the Court does not expect instantaneous compliance with section 362 upon receipt of notice [of the bankruptcy], the Court

does expect those acts which violate the automatic stay to be stopped and/or corrected within a reasonable time.").

Having been notified by text message of the debtor's bankruptcy, it was incumbent upon Loudon Motor to restore the status quo by returning the debtor's car. Instead, even after being informed of the bankruptcy, Loudon Motor refused to return it. When the debtor went to Loudon Motor's Canton location to attempt to reclaim her car, the debtor was not allowed to inspect what she believed to be her own car. Ultimately, despite knowing of the bankruptcy petition and the debtor's desire to regain possession and redeem her car, Loudon Motor refused to return her car. It then sold or arranged to sell her car to a third party without obtaining relief from the automatic stay. Accordingly, the Court concludes that the creditor's violation of the automatic stay was willful.

*DAMAGES*

The Court has the authority to award actual and, if appropriate, punitive damages for willful violations of the automatic stay. An award of actual damages is mandatory if the stay violation is willful. *In re Bivens*, 324 B.R. at 42; *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000); *see United States v. Harchar*, 331 B.R. 720 (N.D. Ohio 2005) (costs and attorney's fees are regularly awarded as actual damages for violation of the stay); *In re Sharon*, 234 B.R. at 687–88 (upholding a bankruptcy court's imposition of damages against a creditor

16

for violation of the automatic stay). Punitive damages may also be appropriate in certain circumstances. An award of damages must be reasonable and supported by evidence. *In re Archer*, 853 F.2d at 499. Under § 362(k), damages must be proven with reasonable certainty and cannot be based on conjecture or speculation. *Id.* As the party seeking damages, the debtor has the burden of proving entitlement to damages. *In re Sharon*, 234 B.R. at 687.

In the present case, Loudon Motor willfully violated the automatic stay when it refused to return the debtor's car and then sold or arranged to sell the debtor's car, knowing that the debtor had filed a Chapter 7 bankruptcy petition. Thus, the debtor is entitled to actual damages, including costs and attorney's fees, resulting from Loudon Motor's willful violation of the automatic stay.

The debtor seeks actual damages as follows:

(1) Lost wages in the amount of $11,200 from eight months of unemployment due to the lack of a car;

(2) $700 spent to obtain alternative rides from friends and Uber;

(3) $200 for personal belongings that Loudon Motor never returned;

(4) $10,794 for the amount she paid Loudon Motor for her car; and

(5) $4,060 in attorney's fees.

The Court will address damages in three sections: actual damages (items 1 through 4), attorney's fees (item 5), and punitive damages.

17

*Actual Damages*: *Lost Wages, Alternative Rides, Personal Belongings,
and Car Payments*

The debtor seeks $11,200 in lost wages for the eight months when the debtor was unable to get to work without a car. The Court believes the debtor is entitled to these lost wages. When Loudon Motor failed to return the debtor's car after having notice of the bankruptcy and sold or arranged to sell the debtor's car to a third party in violation of the automatic stay, it was foreseeable that the debtor would lose her job due to lack of transportation. Had Loudon Motor properly fulfilled its affirmative duty to restore the status quo, the debtor would have had her car back, thus ensuring her ability to have proper transportation to get to work. The debtor seeks an amount equal to three shifts per week as a waitress at $100 per shift for eight months. The Court awards the debtor $11,200 for lost wages.

The debtor also seeks $700 for the costs she incurred finding alternative rides through other people and Uber while attempting to secure work and caring for her children. The debtor testified that although she lost track of the costs associated with finding alternative rides, she had $700 in her bank account that she used solely for these rides. She testified that the money in this account has since been depleted. Had Loudon Motor properly restored the status quo, the debtor would have had possession of her car and therefore would have had no need to find alternative transportation. The Court awards the debtor $700 for the cost of alternative rides.

18

The debtor seeks $200 for the value of unreturned personal items that were in her car at the time Loudon Motor repossessed it. The debtor testified that although some of her personal items were returned, other items were never returned including her license plates, two phones, some clothes, and a fax machine. The debtor valued the fax machine at $80 and the entirety of the unreturned personal items at $200. Loudon Motor should have returned all of her personal items, as a creditor has a duty to surrender the personal property it caused to be removed from the debtor. *See Kaiser v. Leader Fed. Bank for Sav. (In re Kaiser)*, 158 B.R. 808, 812 (Bankr. D. Neb. 1993) (finding that the creditor's "failure to surrender and turnover the personal property it caused to be removed" violated the automatic stay). The Court awards the debtor $200 for the personal items that Loudon Motor never returned.

The debtor seeks $10,794 for the amount that she paid Loudon Motor for her car. The Court accepts as true that the debtor paid this amount to Loudon Motor. However, the debtor indicated in her bankruptcy schedules A/B and C, filed under penalty of perjury, that her 2007 Mustang had a value of $4,000 (Docket No. 1 at page 3). The debtor also used a $4,000 value in a motion to redeem the vehicle under 11 U.S.C. § 722 (Docket No. 39), which was later withdrawn (Docket No. 51). Section 722 of the Bankruptcy Code allows an individual chapter 7

19

debtor to redeem personal property by paying the lienholder the lesser of the allowed secured claim or the value of the collateral.

Under the principle of judicial estoppel, the debtor cannot assert that her car's value for exemption purposes is just $4,000, but is something higher when determining stay violation damages under 11 U.S.C. § 362(k). *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (discussing principle of judicial estoppel). The Court will therefore limit the value of the debtor's car to $4,000. Given that the debtor still owed $122 on her car, Loudon Motor's actions prevented the debtor from redeeming her $4,000 car for $122, resulting in $3,878 in damages for the net value of her car that was never returned.

To summarize so far, the Court awards the debtor $11,200 for lost wages, $700 for the cost of alternative rides, $200 for her lost personal items, and $3,878 for the net value of her car, totaling $15,978.

*Attorney's Fees*

Section 362(k) authorizes an award of attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action that § 362(k) authorizes. *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1097 (9th Cir. 2015) (en banc); *Young v. Repine (In re Repine)*, 536 F.3d 512, 522 (5th Cir. 2008); *Duby v. United States (In re Duby)*, 451 B.R. 664, 674–77 (B.A.P. 1st Cir. 2011). "The amount of attorneys'

20

fees a 'party seeks to recover under § 362(k) must be reasonable,' and 'courts generally apply the "lodestar" method when determining the reasonableness of attorney's fees.' " *In re Johnson*, 580 B.R. 766, 796 (Bankr. S.D. Ohio 2018) (quoting *In re Webb*, No. 11–8016, 2012 WL 2329051, at *16 (B.A.P 6th Cir. Apr. 9, 2012)); *see also In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991) ("[B]ankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees."). In addition to the lodestar method, a court may exercise its discretion to consider other factors, including the results obtained. *Id.*

The debtor seeks attorney's fees in the amount of $4,060 (20.3 hours at an hourly rate of $200) stemming from meetings with the debtor, the preparation and filing of a motion to return possession of the car, preparation and filing of a motion to redeem, preparation and filing of a show cause order upon Loudon Motor, and costs associated with the evidentiary hearing. The billing time includes a total of 12.6 hours for work identified on Exhibit 12, plus 0.2 hours for the conference call with the Court on September 14, 2018, 4.0 hours for the deposition of Walter Loudon on September 20, 2018, and 3.5 hours to attend the hearing on October 4, 2018, including travel time. Loudon Motor did not object to the amount of attorney's fees sought by the debtor, including the hours billed or her attorney's billing rate of $200 per hour.

The Court has conducted its own review of the fees requested. The Court will not award attorney's fees for 0.8 hours spent preparing the motion to redeem since the motion was withdrawn. Nor will the Court award attorney's fees for the time to travel to and from the hearings on July 24, 2018, and October 4, 2018. Under the Guidelines for Compensation and Expense Reimbursement for Professionals adopted under Local Bankruptcy Rule 2016-1, travel time of one hour or less round-trip is not compensable. Accordingly, the Court will reduce the hours requested for July 24, 2018, and October 4, 2018, by one hour for each day. This results in a reduction of 2.8 hours from the total of 20.3 hours requested, or 17.5 hours. When multiplied by the hourly rate, the total lodestar amount is $3,500.

In appropriate circumstances, the Court may adjust the lodestar amount to consider other factors. *See In re Boddy*, 950 F.2d at 338. The Court is concerned that the debtor's attorney, while well-meaning, failed to give his client's bankruptcy case the proper attention and sense of urgency that were warranted under the circumstances. In a situation like the present case, when the debtor's car had been repossessed and getting the car back was the principal purpose for filing bankruptcy, it is incumbent upon the debtor's attorney to (1) take the initiative and notify the affected creditor of the debtor's bankruptcy filing himself, (2) deal directly with the creditor or its attorney, and (3) promptly move the Court for relief

22

if his own efforts to get the car returned without assistance of the Court proved unsuccessful.

A bankruptcy filing is a stressful and emotional event for an individual debtor. Part of why a debtor pays for a skilled bankruptcy professional is so that the attorney can handle the critical task of notifying creditors who are likely to take imminent action against the debtor or the debtor's property before receiving formal notice of the bankruptcy filing from the Court. As this case unfortunately demonstrates, a debtor informing a creditor on her own that a bankruptcy case was filed may not carry the same weight as an attorney informing a creditor or the creditor's attorney of the bankruptcy filing. It may even be counterproductive. Moreover, once the debtor received a text message from Loudon Motor's attorney insisting that all communications come from her attorney, the debtor's attorney should have taken over the effort to get the debtor's car returned.

In addition, the debtor's attorney was presumably aware of the urgency with which the debtor needed her car back. Yet, the attorney's own time records do not include any time spent contacting Loudon Motor or its attorney during the first two months of the debtor's bankruptcy. The debtor's attorney eventually filed a motion seeking turnover of the debtor's car on December 13, 2017, two months after filing the debtor's bankruptcy case. The Court is always willing to consider motions on an expedited basis when appropriate, but the debtor's attorney never made such a

23

request. Once the Court ordered the debtor's car to be returned, the debtor's attorney again could have taken the initiative in contacting Loudon Motor or its attorney to arrange the car's return. The record also reflects that the debtor's attorney either requested or acquiesced in numerous postponements in his efforts to have the Court resolve the debtor's motions seeking relief due to Loudon Motor's continued violation of the automatic stay. More than a year has passed since the debtor filed for bankruptcy primarily to get her car back, and the debtor has been without a car or an award of damages the entire time.

The Court recognizes that this is not the first time it has seen a skilled bankruptcy attorney fail to take the initiative in dealing directly with a creditor when time is of the essence, leaving a client to deal with a recalcitrant creditor on his or her own. Unfortunately, the work done in this case, while not necessarily unreasonable, does not reflect all that could have been done or the urgency with which it should have been done. Under these circumstances, the Court believes it is appropriate to reduce the award of attorney's fees by 25 percent to $2,625. This reduction reflects the Court's belief, for the reasons stated above, that the value or quality of the attorney's services was not worth the full amount reflected under the initial lodestar analysis. *See In re Boddy*, 950 F.2d at 338 (when appropriate, bankruptcy court may adjust lodestar amount to consider other factors, including results obtained); *see also Gonter v. Hunt Value Co.*, 510 F.3d 610, 616 (noting

24

that any justifiable upward or downward departure from lodestar calculation deserves substantial deference when the trial court provides clear and concise explanation of its reasons).

The Court also directs that the debtor's attorney not attempt to collect any additional attorney's fees from the debtor absent further order of the Court. Should the debtor's attorney seek to recover additional fees or any portion of the damages awarded to the debtor, other than the $2,625 in attorney's fees, the attorney must file a detailed fee application that includes a copy of a written fee agreement with the debtor.

The Court awards $2,625 in attorney's fees to the debtor.

*Punitive Damages*

A party injured by a willful violation of the automatic stay may recover punitive damages in appropriate circumstances. The debtor must show that the "creditor's conduct was 'egregious, vindictive, or intentionally malicious.' " *Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 304 (Bankr. N.D. Ohio 2013) (quoting *In re Bivens*, 324 B.R. at 42); *see also Weary v. Poteat*, 627 F. App'x 475, 477 (6th Cir. 2015) ("[t]his, frankly, is the most egregious automatic stay case that I've heard since I've been on the bench and I've been on the bench a long time") (quoting the bankruptcy court transcript at page 15–16). "While proof of an overt wrongful intent is not required, it must be shown

25

that the creditor acted in bad faith or otherwise undertook its actions in reckless disregard of the law." *In re Bilfield*, 494 B.R. at 304. An award of punitive damages is within the bankruptcy court's discretion where actual damages are an insufficient deterrent to further violations. *In re Archer*, 853 F.2d at 500. The primary purpose of awarding punitive damages for a willful automatic stay violation is "to cause a change in the creditor's behavior," and "the prospect of such change is relevant to the amount of punitive damages to be awarded." *In re Mocella*, 552 B.R. 706, 731 (Bankr. N.D. Ohio 2016) (quoting *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999)).

Loudon Motor's conduct in this case was egregious, vindictive, and intentionally malicious. As discussed above, although the repossession of the debtor's car was done prepetition, Loudon Motor's failure to restore the status quo by returning her car after having notice of her bankruptcy filing was wrongful. Loudon Motor refused to return the debtor's car, with knowledge of the debtor's bankruptcy and desperate situation. Loudon Motor then sold or arranged for the sale of the debtor's car, again with knowledge of the debtor's bankruptcy and her desperate situation.

These events, viewed in the aggregate, demonstrate acts by Loudon Motor that are egregious, vindictive, and intentionally malicious. Loudon Motor took advantage of the debtor for reasons that the Court can only speculate—she was a

26

woman, she was in a desperate situation, her employment relationship with attorney O'Malley ended poorly, or some other reason. Regardless of the reasoning, just as the bankruptcy judge in *Weary v. Poteat* observed in the case before him, the violation of the automatic stay in this case is the most egregious automatic stay violation that the undersigned judge has witnessed in more than sixteen years as a bankruptcy judge. The Court therefore believes punitive damages are appropriate.

The Supreme Court has found various awards to be grossly excessive and thus contrary to due process. *See, e.g., BMW of N. Am. v. Gore*, 517 U.S. 559 (1996)*; State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). To ensure that a punitive damages award comports with due process, the Supreme Court has set forth three factors for courts to consider:

> (1) the degree of reprehensibility of the defendant's misconduct;
> (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 418. Despite these factors, "[t]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 419. Courts have considered various factors to determine the appropriate amount of damages based on the reprehensibility of the conduct, such as whether the target of the conduct

had financial vulnerability, whether the conduct involved repeated actions, and whether the harm was the result of intentional malice. *Id.* at 419; *see also Gibson v. Moskowitz*, 523 F.3d 657, 664–65 (6th Cir. 2008) (applying guideposts identified by the Supreme Court). Although the Supreme Court has yet to set a constitutional limit on the ratio of punitive damages to compensatory damages, the Court appears to favor single-digit ratios. *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425 (stating that although the ratios the Supreme Court has upheld are not binding, such "single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios of 500 to 1 . . . or . . . 145 to 1").

In this case, the Court finds an award for punitive damages of $25,000, a less than 2 to 1 ratio to the compensatory damages, is reasonable and appropriate to achieve both punishment and deterrence. In considering the factors as stated by the Supreme Court, Loudon Motor's conduct was reprehensible. Loudon Motor refused to return the debtor's car despite knowledge of her bankruptcy filing and her desperate situation. It then sold or arranged to sell her car without obtaining relief from stay. Loudon Motor also transferred the title or arranged for the transfer of title of the debtor's car from the debtor to a third party on March 13, 2018, with actual knowledge of both the debtor's pending bankruptcy and the Court's February 1, 2018, order to return the debtor's car. Loudon Motor

knew of the debtor's financial vulnerability, as the debtor originally purchased her car after attorney O'Malley connected them to get her a car despite her poor credit history. Walter Loudon also conceded that it appeared the debtor was living out of her car when Loudon Motor repossessed it.

As noted earlier, the amount of punitive damages is less than double the actual damages suffered. Plus, other courts have awarded punitive damages of similar amounts for automatic stay violations. *Crow v. Ocwen Loan Servicing, LLC. (In re Crow)*, No. 13-3012, 2013 WL 4668558, at *10 (Bankr. N.D. Ohio Aug. 30, 2013) (finding an award of punitive damages in the amount of $11,000 appropriate); *Cox v. PNC Fin. Grp., Inc. (In re Cox)*, No. 10-3191, 2010 Bankr. LEXIS 6525, at *12 (Bankr. N.D. Ohio Oct. 15, 2010) (finding an award equal to three times the actual damages for a value of $8,349 as appropriate to achieve punishment and deterrence); *In re Kortz*, 283 B.R. 706, 714 (Bankr. N.D. Ohio 2002) (awarding $51,500 in punitive damages for repeated violations of the automatic stay).

The Court awards the debtor $25,000 in punitive damages.

## ENSURING TIMELY PAYMENT

The Court intends this award of damages under 11 U.S.C. § 362(k) to be a final appealable order. *See* 28 U.S.C. § 158; *Ritzen Grp., Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC)*, __ F.3d __, No. 18-5161, 2018 WL 4997779

(6th Cir. Oct. 4, 2018).  In other words, this decision finally resolves a discrete

claim for relief—namely, the debtor's motion for an award of damages for Loudon

Motor's willful violation of the automatic stay.  Nevertheless, the Court recognizes

that this remedy will prove meaningless if Loudon Motor refuses to pay promptly

the damages awarded.  The Court therefore indicates its intention to commence a

new proceeding to use its civil contempt powers to compel compliance with its

order should Loudon Motor fail to pay the amount awarded by

**November 30, 2018**.

> [C]ivil contempt sanctions, or those penalties designed to compel
> future compliance with a court order, are considered to be coercive
> and avoidable through obedience, and thus may be imposed in an
> ordinary civil proceeding upon notice and an opportunity to be heard.
> Neither a jury trial nor proof beyond a reasonable doubt is required.

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

"Contempt proceedings enforce the message that court orders and judgments are to

be complied with in a prompt manner."  *Elec. Workers Pension Trust Fund of*

*Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir.

2003).

These civil contempt powers include the imposition of per day penalties

against Loudon Motor and/or anyone in a position to ensure that Loudon Motor

makes this payment.

> A command to the corporation is in effect a command to those who
> are officially responsible for the conduct of its affairs.  If they,

30

apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Gary's Elec. Serv. Co.*, 340 F.3d at 380 (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)). Corporate officers can be held in contempt for the actions and inactions of their corporation because of their relationship to the corporation. *See Gary's Elec. Serv. Co.*, 340 F.3d at 380; *United States v. Hochschild*, 977 F.2d 208, 213 (6th Cir. 1992). Whether the corporate officer is a named party in the action is not controlling on the court's contempt powers. *See Gary's Elec. Serv. Co.*, 340 F.3d at 382 (relying on *Wilson* and *Hochschild*). This would presumably include Walter Loudon, the statutory agent of Loudon Motor Sales, LLC, and/or Gregory D. Loudon, who appears to be the sole member of Loudon Motor Sales, LLC. *Ohio Secretary of State, Business Search*, https://businesssearch.sos.state.oh.us/#busDialog (last visited Nov. 2, 2018).

These civil contempt powers also include incarceration of anyone in a position to ensure that Loudon Motor makes this payment as a means of compelling compliance.

The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order "to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." . . . In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an

31

affirmative act, and thus " 'carries the keys of his prison in his own pocket.' "

*See United Mine Workers v. Bagwell*, 512 U.S. at 828 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)) (citations omitted). The Court recognizes that Loudon Motor has a right to challenge this Court's decision on appeal; however, the filing of an appeal will not stay Loudon Motor's obligation to pay this damage award absent the posting of a supersedeas bond or other appropriate security under Bankruptcy Rule 8007. Should the damage award not be paid by November 30, 2018, the Court intends to issue an appropriate order to show cause directed at Loudon Motor, Walter Loudon, and Gregory D. Loudon, with a hearing on the Court's order to show cause to be set for **10:00 A.M. on December 18, 2018**, in Courtroom 1A of the Howard M. Metzenbaum U.S. Courthouse, 201 Superior Avenue, Cleveland, Ohio 44114.

## CONCLUSION

For the reasons stated above, creditor Loudon Motor Sales, LLC willfully violated the stay by failing to promptly return the debtor's car after receiving notice of the debtor's bankruptcy and a request to return the debtor's car. The debtor, Susan Addleman, is awarded actual damages in the amount of $18,603, including $2,625 in attorney's fees, and punitive damages in the amount of $25,000 pursuant to 11 U.S.C. § 362(k)(1). Loudon Motor must pay $43,603 to Susan Addleman through the debtor's attorney, Kenneth Hurley, 6058 Royalton

32

Road, North Royalton, Ohio 44133, by **November 30, 2018**. If Loudon Motor

fails to pay this amount by November 30, 2018, the Court intends to issue an

appropriate order to show cause, directed at Loudon Motor, Walter Loudon, and

Gregory D. Loudon, with a hearing on the Court's order to show cause to be set for

**10:00 A.M. on December 18, 2018**, in Courtroom 1A of the Howard M.

Metzenbaum U.S. Courthouse, 201 Superior Avenue, Cleveland, Ohio 44114.

IT IS SO ORDERED.

33